Three cases, United States v. Wright, Tipsy v. Tipsy, and United States v. Ruiz have been submitted on the briefs. The next case on calendar for argument is United States v. Lemus-Lara. Good morning, Counsel. Good morning, Your Honors, and may it please the Court, Gary Bersham on behalf of Appellant Mr. Lemus-Lara. I would like to start this morning by discussing jurisdiction. In an MDLEA prosecution, the government generally is required to prove two different types of jurisdiction, statutory jurisdiction and constitutional jurisdiction. We're arguing this morning that the government failed to obtain valid findings as to either area in this case. Starting with statutory jurisdiction, 70503 of the MDLEA has very strong limiting language, which really is the centerpiece of the jurisdiction as to this statute. It requires the conduct to have occurred while on board a covered vessel. This case presents the issue of if someone conspires to violate section 70503, do they also have to have been on board that covered vessel to be covered by the statute? Counsel, I'm having a hard time with the limit. You're so constraining that statute that the only way you could convict somebody of conspiracy to fill a vessel with thousands of kilos of drugs is they have to have been on board the vessel. I thought that the intent of Congress in enacting the MDLEA was in order to expand the reach to those who were offshore but integral participants in the international drug trafficking conspiracy. I think if that's what Congress wanted to do, I think it would have written the statute very differently. In the Biestas case, which is a D.C. circuit case that goes the other way from what we're arguing, they talked about 18 U.S.C. 1203. 1203, I think, is a really good model of what Congress does when they're trying to give unlimited extraterritorial jurisdiction to conspiracies but also have limitations, limiting language in the statute. I feel if Congress really wanted that approach to apply to the MDLEA, it would have written the statute very differently. But the problem it was addressing is that typically these cases involve stateless vessels. They're basically akin to pirates on the high seas. And international law is different with regard to treating pirates because of the fact that they owe no allegiance or fall under the protection of any other country. And they do that by choice because they're trying to avoid capture and prosecution in countries that may be touched by their activities. So I'm back to my original question. Isn't that what motivated Congress to enact this statute was to try and subject these otherwise lawless criminals to the reach of the United States law when the object of the conspiracy is to import huge quantities of drugs to the United States? Well, it certainly does that as to people who are on these vessels. And something that the D.C. circuit didn't really acknowledge, I think, which is important to note, is these crimes often include more than one vessel, multiple vessels. You have the vessel. Here we had four, right? Right. Four go-fast boats. Even beyond go-fast boats, you may have boats that are involved in fueling, boats that are involved in offloading before it goes to a different country. And so the D.C. circuit said, well, if it's only people who are on this particular vessel, then that's the entire reach of the statute. Under your theory, counsel, responding to that point by the D.C. circuit, would it matter whether the folks, the co-conspirators on the other vessels were on stateless vessels or vessels tied to, registered in other countries? It would depend on whether the vessels were covered. And that's what the statute talks about, the covered vessels. So let's imagine one stateless vessel stopped by the Coast Guard and three registered properly in Ecuador. Are the conspirators on the Ecuadorian vessels covered? It depends on what Ecuador, I think, responds. Ecuador says, yes, they're registered. That excuses, under your theory, the folks on the other boats? No, because Ecuador, I believe, could give permission to – They could, but let's say they don't. I'm trying to press you on your definition, your response to Judge Srinivasan's point about what work the conspiracy provision does, if you are correct. In your Honor's example, if there are three other boats that are registered to – that are flagged, let's say to Ecuador, and they are seized and the proper channels are taken to determine whether they're going to allow the U.S. to have those vessels. If Ecuador said they were flagged and said, we do not give you permission to assume jurisdiction over the vessel or the people, then I think in that situation, yes, those people would not be prosecuted as part of this case. Thank you. You're welcome. I think I'm back to legislative intent here. Isn't the whole purpose of the MDLEA in order to go beyond what I will call the little people in the cartel operation? I mean they're basically just the seaman, the captain and the crew of the vessel. And it doesn't do us much good if we're trying to break the back of international drug cartels to just catch only the little people. We want to go after the higher-ups who never stepped foot on board the covered vessel for obvious reasons because they don't want to be caught at sea by the Coast Guard. Or now have something much worse happen to them. Yeah, well, then we don't have a case and so it's not our problem. Exactly. Well, that's what count two is for, the 959. That's what the government should use to prosecute people who are not on a covered vessel and are land-based co-conspirators. And so that statute, I believe, is from 1970. It's an old statute. It's perfectly aligned for the government to prosecute people who are land-based co-conspirators. And so I think that that sort of piggybacks on the MDLEA. MDLEA applies to people who are on board covered vessels. And for those who are not, those who are land-based, then 959 is where the government prosecutes those people. I'd like to pivot, if I can, now to the constitutional jurisdiction. I haven't found any case that deals with this particular issue, which is just like the government has to prove statutory jurisdiction, they have to prove basically minimum context, kind of a due process sort of approach to the constitutional jurisdiction. That's actually decided by the district court in this circuit. It's not submitted to the jury. It's not an element of the offense. But in this case, the jury was instructed that one of the elements that they had to find beyond a reasonable doubt was the jurisdictional element. Did they not? That was for count one, which the jury found. The constitutional jurisdiction, it's typically decided by the district court. It's not decided by the jury. In this case, but there's an exception to the requirement for constitutional jurisdiction. That is, if a person makes a decision to get on one of these stateless vessels, at that point, they have basically relinquished their right to protection under international laws. And so cases from this court, like Caicedo and Giuda and Moreno-Murillo, have said that when someone makes that knowing decision to get on one of these stateless vessels, then there's no reason to find nexus jurisdiction in that situation. But if whereas here, the jury is instructed that they must find a nexus by proof beyond a reasonable doubt, I'm not sure I understand what difference would it make whether the district court makes that ruling pretrial or the jury decides it as part of the government's burden of proof at trial. I think I look to the actual language in those cases that I just mentioned. For instance, in Caicedo, where a defendant attempts to avoid the law of all nations by traveling on a stateless vessel. Giuda, defendants had ample notice that individuals on board stateless vessels take the chance that any nation might exercise jurisdiction over their illegal activities. Moreno-Murillo, if a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them. So I think the difference, to Your Honor's question, is this court has looked at that as a choice by a person. Does a person choose to get on that stateless vessel and benefit from it potentially, but also forfeit those constitutional due process minimum contact rights? Mr. Burcham, you all, you argue in your brief that in essence because we're using the label jurisdiction here, the question can be raised de novo. As I understand the logic of this requirement, though, for international law here, it's pretty much akin, and we've said as much, to personal jurisdiction minimum contacts, right? Correct. That is an eminently waivable issue. And as I understand it, nobody asked the district court here to make a nexus finding. Is that correct? That's correct, yes. So why should we not just treat that issue as waived by this defendant? Your Honor, waiver, I believe, is the intentional relinquishment of a known right. Well, in the context of personal jurisdiction, we find waiver in civil context just by the failure to assert the defense, right? Right. Why shouldn't we follow the same approach here rather than reverse a conviction because the district judge did not make a finding that nobody asked it to make? First of all, I would say the Scott decision from this court doesn't make that distinction. If it can be raised at any time, whether it was raised below or not, I don't think we look necessarily to was it forfeited, was it waived, what happened below. I think Scott says, look, you can raise jurisdiction. But how is due process violated if the jury makes the finding rather than the judge? I mean, you had a full trial. You had the opportunity to cross-examine the government's witnesses on these jurisdictional points. I'm trying to see where the constitutional error occurred. Well, I think the error occurred, not that the jury found that the vessel was stateless and, therefore, there's jurisdiction for count one, but that the law of this. The jury was asked to find whether or not there was a sufficient tie between your client's conduct and the United States. That's what the jury was told they had to decide. Correct. And they did that by convicting him. That is correct. And the point I'm trying to make is that, maybe not so well, is that there has to be that decision by the person to board that stateless vessel, to be on the stateless vessel. It's not enough to. . . Okay, that assumes that we buy your narrow construction of the statute. But I guess what I'm struggling with here is what's arbitrary or fundamentally unfair to your client based on what happened here where the jury made the call rather than the district judge. And there was, as my colleague has pointed out, there was no contemporaneous objection or request by any party that the court do it instead. I think maybe this court discussion in Medioc is helpful for that, where the court didn't let the district judge do the after-the-fact clarification of the nexus jurisdiction in that case. And the reason why is because it wasn't a live issue at the time in the district court. But it doesn't sound like it was a live issue here. I assume there was no objection made to the jury instructions. There were none. Okay. That's correct. All right. And so I think that if this was a live issue and if the district court, in our interpretation, interpreted the law right, it would have been something that the defense would have responded to as opposed to just focusing on other issues. I've got a couple minutes left. There's a couple trial issues in this case. I don't know if the court would prefer argument on one over the other. They're pretty well-briefed. And those apply to the non-MDLEA count, correct? The first one applies to count two, Your Honor, is correct. Closing argument. Exactly. I would submit the girlfriend issue applies to both because evidence never, ever should have come into this trial. And I understand that there was evidence of ---- It was admitted for identity, and you're saying, well, but you had the testimony of the two cooperators. Exactly. So the argument regarding the closing argument issue applies exclusively to count two. I would submit that the second trial issue applies to both counts. Okay. If we were to agree with you on the jurisdictional issues as you label them on count one, would retrial be permissible? I believe it would, yes. Thank you. Thank you, counsel. Thank you very much. We'll hear from the government. Good morning, Your Honors. May it please the court, Peter Horn for the United States. To start with the jurisdictional or statutory issue here, due process was not violated, and there are a couple reasons for that. First, with stateless vessels, and there are two of them here, uncontroverted evidence at trial, there is no requirement of a nexus, not for the judge to find or for the jury to find. Now, what the jury was properly instructed on is whether the, instructed on, and this is at pages 64 and 66 of the record, is whether the vessel is subject to U.S. jurisdiction. There are several ways that a vessel can be subject to U.S. jurisdiction and be stateless. Here, the only basis the jury was given was statelessness. And that was the only theory, the sole argument the government was making at trial. And this is evident at pages 931 and 934, through 934, the supplemental excerpts. And so, in finding that the vessel was, boats too, really, were subject to U.S. jurisdiction, the jury necessarily found that they were stateless. And that's appropriate based on the extensive and really undisputed evidence of that at trial. So your argument is because the vessels were stateless, there was no requirement of a nexus finding between the conduct and the United States? Exactly. And that's evident in several cases from this court. Parlaz is one. Moreno-Murillo is another. There are several others that appear in the party's briefs as well. Even if the court would look to some nexus, that's satisfied here. Due process is not offended. And second, the D.C. circuits have made this clear in their opinions that is it arbitrary or fundamentally unfair for someone connected to, conspiring with those aboard stateless vessels to be held in a court hearing? It's not. They know that their conduct is illegal somewhere. And by working with stateless vessels, they subject themselves to the jurisdiction of all nations. They're pariahs, akin to pirates, as Judge Solomon pointed out. And due process, by no means, is violated. But even if the court were to look to some connection to the U.S., that is clear here. Based on the wiretap evidence showing, in fact, a shipment of cocaine to the United States, to New York, there's testimony of Malgar and Ramirez, undisputedly, explaining that these drugs were for New York. I'm sorry, these drugs were for the United States. They were paid in U.S. dollars. Of course, it's the biggest market. And not just the government's experts agreed on this. In fact, all three experts, the defense expert as well, agreed that, yes, the U.S. market is the biggest, and most drugs from South and Central America, most cocaine is going there. So there is ample, ample support for that. Picking up on Judge Hamilton's point about this not being raised before, we haven't argued waiver here. But at a minimum, I believe this issue can be reviewed for plain error. And the Ramirez case from the D.C. Circuit, I think, explains this pretty well in terms of it being an issue of subject matter jurisdiction or a merits issue. And the claims Lemus Lara is raising on appeal are fundamentally merits issues involving the reach of the statute, whether it covers him. It wasn't raised before, and this court can review for plain error. Either way, the standard of review is not this positive. And this court can apply either one, including one more favorable to him, and canon, we believe, should affirm. So what was the relevance of the girlfriend's conviction? A couple things, Your Honor. First, for identity of Lemus Lara, Phoenix. And it helps tie together the BBM messages about going to Columbia, through El Salvador, and then the morning after, the flight records, and who's traveling together. Because at that time, there are communications intercepted about Phoenix, not fully identified yet, going to Columbia through El Salvador and having two co-travelers, another person and that person's mother. So looking at flight records, well, there are six Guatemalans, three of them with the same booking record, same emergency contact. Agent Watrous testified extensively about this at trial. Those appear to be that group of three traveling together. And then immediately after, Phoenix is talking about there being, sorry for my language, a shit show at the airport because anti-narcotics agents came down hard on the lady. So we have Phoenix talking about one of those people. Who could that be? Who could be getting the heat? Well, agents checked their records, and that's Maiba Oriana. She has the prior conviction. And so it helps demonstrate that the heat's coming down on her when they land in Medellin. Who's talking about her? Well, that's Phoenix. That's Lemus Lara, who she's traveling with. So it ties that together and helps establish identity. It's not the only evidence, but in wiretap case like this, and especially with evidence from Blackberry Messengers, this is a matter of proving beyond a reasonable doubt identity. And piecing together a puzzle using maybe names. Close to his name appeared in one message in July 2017. But really, it's certain identifying facts, people there around, locations, piecing together that puzzle and showing that the phone is in his hands through multiple means. Now, the conviction also gave context to those messages, which were at an important point in the conspiracy. That's when he's first going down to Columbia to set up a new line. Wiretap showed that as well. And then it's also relevant to corroborate and give some context to Melgar's testimony. Now, he had met Oriana. He didn't know her name. He had met her. You're talking about the cooperators? Exactly. And Melgar in particular. That's Aquaman on Blackberry. And he had met her. William, Lemus Lara's brother, had told him that she had done time in the United States on drug offense. So he separately knew that fact. And he was also shown a picture. This is Exhibit 36, pages 630 to 32, 1129 in the record. He was shown a picture of a meeting with other co-conspirators in September 2017. Now, he wasn't in that photo because he was sitting at a different table as a lookout. But when, in fact, there is that fact of the conviction in the United States, it shows, well, he knew it, and he knew it right. It shows his testimony is reliable. It also puts him more, including in that photo, Exhibit 36, at the table, in the conspiracy. It helps support his testimony, which is not just identifying Lemus Lara as Phoenix, but explaining, as Ramirez did too, what the conspiracy did. Sending multiple boatloads of cocaine toward the U.S. And that was the basis of the representation to the district judge that she was an unindicted co-conspirator. That's right. That's right. And I think it's an accurate finding that a lot of the potential prejudice under 403 kind of falls away when she's part of the conspiracy. It also, and we had a note in our brief about this, but this isn't 404B evidence. It's just straight 403. And in our view, the district court's analysis was right. Even if the court were to find some issue, of course, there is overwhelming evidence of his guilt. There was no suggestion, was there, that Mr. Lemus Lara had anything to do with that prior conviction? There was no suggestion of that at all. Thank you. I could, I want to address just one other point on the MDLEA question. And I can briefly touch on the closing argument issue if the court likes as well. But my friend on the other side argued a few moments ago that the statute shouldn't be expanded. First, in our view, as the D.C. Circuit and the Second Circuit explained well, this is not an expansion of the statute we're seeking. This is a plain application of the law, of the text of the statute, and looking to its purpose, and, of course, the other persuasive opinions there. But he argues it shouldn't be expanded for this context, and the government should instead just use 959, the 959, 960, 963 charge. Now, there are, I think, many, many cases, including this one, where a defendant can be guilty of both offenses, as Lemus Lara properly is here. That's not necessarily every case. And I think Antonius, one example of why the MDLEA should apply here and can apply independently of the 959 charge is the Antonius case. As from the Second Circuit, that involved drugs going to the Netherlands. There was no evidence, no suggestion that they were going to the United States. But the conviction was affirmed. The application of the MDLEA is proper in those circumstances, as it should be. This is a matter of U.S. interests, not only in drugs that are coming to the United States, but of trafficking drugs, especially in these amounts, on the high seas and, as the panel has already pointed out, in stateless vessels. To briefly touch on the final issue Lemus Lara raises, which is the closing argument, and the prosecutor's, what was a brief comment, because there was so much evidence of actual knowledge and intent, but a brief comment about the standard for reasonable cause to believe. The prosecutor's statement here was accurate. It tracked what this Court has explained in multiple cases. Monguia, Kaur, the Tenth Circuit in Safo, Juhal. What the prosecutor explained, this is pages 914 and 915, is that the jury should look to a reasonable person, but knowing all the same facts, and then proceeded in the paragraphs immediately following, and the pages after that, to explain the facts Lemus Lara knew, what people around him were doing. And so the prosecutor explained that, just as this Court has made clear, it's an objective and a subjective inquiry, and that was grounded, as the prosecutor explained, in what Lemus Lara knew, those facts particular to him. Now, of course, there was facts, and this was the thrust of the government's argument in a little over an hour of a closing argument, actually, is all the facts showing his participation in the conspiracy and his actual knowledge. So any issue is harmless. Lemus Lara certainly couldn't meet the other prongs of plain error review, but in our view, there was no error to begin with. If there are no other questions from the panel, I'll submit. Thank you. Thank you, counsel. Just a couple quick points about the final issue we've raised, the prior conviction evidence. The government said you've got to put the pieces of the puzzle together to show the jury what the case is about. I mean, if whether Mr. Lemus Lara was the user of Phoenix or not, if that was a 500-piece puzzle, there would have been 499 pieces put together, and then there's the piece you can never find. Well, it did corroborate the identification by the one co-conspirator who had seen her before and knew who she was. But he met her. He knew her. The fact that he knew that she had a conviction, I don't see how that bolsters the testimony any more than the fact that the – Well, but as I understand it, the government didn't know who Phoenix was when they intercepted the messages that said there was a group traveling from, what was it, Ecuador to Colombia in order to set up a cocaine supply chain. And so what they did know was that a woman was accompanying him on the trip who had a prior conviction, right? So why isn't that admissible for purposes of establishing identity? Although I think Mr. Horn makes an interesting argument that this really isn't a 404B issue because she's not charged as a defendant in the case. So it's a question of establishing her identity in order to link him to being Phoenix in the phone messages. Right, which the government did so well through the Avianca Airlines flight manifest, the passport records, the birth records. I mean, that was a really nice job of investigation by the agents before the conviction ever was stated. I mean, that issue was closed, and then they still asked the question about the prior conviction. There was just no reason for it at that point. The old chief case is on point for this. If you can make a point with less prejudicial, less inflammatory evidence, then that's what you have to do. And the point was made that that issue was closed before they ever brought it up. It was not conceded, however. It was not conceded. Don't we review that for abuse of discretion? The district court's determination that this evidence should be submitted to the jury? Yes, yes. That issue was preserved. And then just a couple final questions. There was no limiting instruction. That was a big issue for this. I mean, if this had been recognized as what it was, there would have been a limit. There should have been a limiting instruction telling the jury not to consider this for propensity, not to consider this. But the court was not asked to give one. Correct, correct. And it wasn't about the defendant. Right, but it was about his girlfriend, and they were together. All right, counsel, you've exceeded your time. Do you want to sum up? Just one final thing about this evidence. If it was so important, they would have mentioned it in closing argument. They just said it was an hour closing argument. They never mentioned Ms. Oriana. Well, that cuts both ways. If they didn't mention it in a closing argument, then it wasn't that crucial to the case. So you can take that both ways. I agree. Thank you, counsel. Thank you very much. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court. The final case on calendar Fitzpatrick v. City of Los Angeles has been submitted on the briefs. That completes our calendar for the day. We are in recess until 9.30 a.m. tomorrow morning. Thank you. All rise.
judges: TALLMAN, RAWLINSON, Hamilton